**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**HANOVER INSURANCE COMPANY**                    **CIVIL ACTION**

**VERSUS**                                        **NO. 12–1680**

**PLAQUEMINES PARISH GOVERNMENT**                 **SECTION "H"(5)**

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment (Doc. 467) and a Motion for Discovery (Doc. 588).  For the following reasons, the Motion for Summary Judgment is GRANTED IN PART, and the Motion for Discovery is DENIED. The Parish's negligence claims against Southeast Engineers, LLC are DISMISSED WITH PREJUDICE.

## BACKGROUND

In 2008, Defendant Plaquemines Parish ("the Parish") hired Catco General Contractors to construct a community center in Boothville, LA.  Plaintiff Hanover Insurance Company issued a performance bond for the project.  Due to several disputes regarding the quality of the completed work, the Parish refused

1

to tender the final payment on the construction contract to Catco.  Catco in turn refused to pay certain subcontractors on the project.  Those subcontractors filed claims with Hanover seeking amounts due on the subcontracts.  Hanover paid those claims and instituted the instant litigation.  Hanover claims that the Parish wrongfully withheld the final payment from Catco, resulting in several hundred thousand dollars in various claims against it.

On May 29, 2013, in response to Hanover's Complaint, the Parish asserted a counterclaim against Hanover and a third-party demand against Catco and several other entities who were involved in the design of the community center. The Parish's counterclaim and third-party demand allege that Catco failed to complete the construction according to specifications.  On June 21, 2013, in response to the Parish's counterclaim, Hanover filed a third-party demand against several of the subcontractors involved in the construction of the community center.

Presently before the Court are the Parish's claims against Southeast Engineers, LLC ("Southeast").  The Parish hired Sizeler, Thompson, Brown Architects ("Sizeler") to create the architectural drawings for the community center.  Sizeler, in turn, hired Southeast to provide structural engineering services for the project.  The Parish has asserted two claims against Southeast. First, the Parish alleges that Southeast was negligent in the performance of its engineering services.  Second, the Parish asserts a breach of contract claim, arguing that it is a third-party  beneficiary to the contract between Sizeler and Southeast.  Southeast now moves for summary judgment on both claims.  The

2

Parish claims that it is entitled to additional discovery and moves the Court to deny Southeast's Motion for that reason.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence

---

[1] Fed. R. Civ. P. 56(c) (2012).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997).

[4] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6]  "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

    Rule 56(d) permits a court to deny a motion for summary judgment, or to defer consideration of it, pending necessary discovery.  Rule 56(d) relief is available when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."[9]  "Rule 56[(d)] allows for further discovery to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose."[10]  "Such motions are broadly favored and should be liberally granted."[11]  Nonetheless, "a request to stay summary judgment under Rule 56[(d)] must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if aduced, will

---

[6] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[7] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[8] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[9] Fed. R. Civ. Pro. 56(d).

[10] *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006).

[11] *Id.*

4

influence the outcome of the pending summary judgment motion."[12]   "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment."[13]

## LAW AND ANALYSIS

Southeast seeks summary judgment on the Parish's negligence claim, arguing that it is prescribed, and on the Parish's breach of contract claim, arguing that the Parish is not a third-party beneficiary to Southeast's contract with Sizeler.  The Court will address each claim in turn.

### I. The Parish's Negligence Claim

Southeast argues that the Parish's negligence claim against it is prescribed.  In this diversity case, the Court must apply state law, including the law of prescription.[14]  The prescriptive period for tort suits in Louisiana is one year from the day of injury or damage.[15]  Louisiana requires that prescription statutes be strictly construed in favor of maintaining the action.[16]  "The burden of proof on the prescription issue lies with the party asserting it unless the plaintiff's claim is barred on its face, in which case the burden shifts to the plaintiff."[17]  "[A] plaintiff has three theories upon which he may rely to establish

---

[12] *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010).

[13] *Id.*

[14] *Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 344 (5th Cir. 2009).

[15] La. Civ. Code. art. 3492.

[16] *Bouterie v. Crane*, 616 So. 2d 657, 660 (La. 1993).

[17] *Bailey v. Khoury*, 891 So. 2d 1268, 1275 (La. 2005).

5

prescription has not run: suspension, interruption and renunciation."[18]

The Parish filed suit against Southeast on December 6, 2013.  Southeast contends that prescription on the Parish's claim was interrupted at that time. The Parish, however, contends that prescription on its negligence claim against Southeast was interrupted on May 29, 2013 when it filed suit against Sizeler and Catco.   The Parish  alleges that Catco, Sizeler, and Southeast are joint tortfeasors.[19]  Southeast disputes that it and Sizeler are joint tortfeasors.  The Court need not resolve this dispute because, even accepting the Parish's argument, the Court finds that the Parish's negligence claim is prescribed.

Louisiana Civil Code article 3493 provides that: "When damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage."   The initial inquiry is: when did the Parish acquire actual or constructive knowledge of its negligence claim against Southeast?   As the Louisiana Supreme Court has explained:

> A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription.   Nevertheless, a

---

[18] *Bouterie*, 616 So. 2d at 660.

[19] La. Civ. Code. art. 2324(C) ("Interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors.").

plaintiff's mere apprehension that something may be wrong is insufficient to commence the running of prescription unless the plaintiff knew or should have known through the exercise of reasonable diligence that his problem may have been caused by acts of [negligence].[20]

In *Blevins v. Long Trusts* the Louisiana Second Circuit Court of Appeal addressed the issue of constructive knowledge in the context of prescription.[21] *Blevins* held that prescription begins to run once the plaintiff "acqui[res] sufficient information which, if pursued, will lead to the true condition of things."[22]  Once the plaintiff becomes aware that he has suffered some damage, prescription begins to run.  It does not matter that the plaintiff later sustains additional damage, or that he later develops a better appreciation of his damages.[23] "Damage is considered to have been sustained, within the meaning of La. C.C. art. 3492, only when it has manifested itself with sufficient certainty to support accrual of a cause of action."[24]

*Blevins* involved a dispute over saltwater contamination to immovable property.[25]  Mr. Blevins and Mr. Matthews own adjoining properties in Webster Parish, Louisiana.[26]  A saltwater pipeline runs through Mr. Matthews' property,

---

[20] *Campo v. Correa*, 828 So. 2d 502, 510–11 (La. 2002).

[21] 162 So. 3d 500 (La. App. 2 Cir. 2015).

[22] *Id.* at 506.

[23] *Id.*

[24] *Id.*

[25] *Id.* at 503.

[26] *Id.*

near the border of Mr. Blevins' property.[27]   During the summer of 2011, Mr.
Matthews accidentally damaged the pipeline with a bulldozer.[28]  As a result of
the damage, a substantial amount of saltwater spilled from the pipeline.[29]  Mr.
Blevins was not immediately aware of the incident because he was recovering
from knee surgery.[30]  Several weeks later, Mr. Blevins learned from a different
neighbor that there had been a saltwater leak on Mr. Matthews' property.[31]  Mr.
Blevins visually inspected his property near the leak and noticed that a large
quantity of topsoil had been removed from the Matthews' property.[32]  The outer
edge of the removal area was the property line.[33]  Mr. Blevins also noticed that
Matthews had removed several large trees from the area of the spill.[34]

Over the next several months, Mr. Blevins began to suspect that some of
the saltwater had traveled onto his property, which is downhill from Matthews'
property.[35]  By early fall of 2011, Mr. Blevins expressed concern that several of
his trees in the area of the spill were dying.[36]  On September 12, 2011, Blevins
reported the spill to the Louisiana Department of Environmental Quality.[37]  The

---

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.* at 504.

[36] *Id.*

[37] *Id.*

following day, Blevins told the Office of Conservation that he was concerned about several dying trees.[38]  An employee from the Office of Conservation told Blevins that, due to ongoing drought conditions, it would likely be impossible to tell whether the trees were suffering from drought or saltwater contamination until the Spring of 2012.[39]  On October 3, 2011, Blevins sent soil samples to the LSU Ag Center.[40]  Approximately a month later, the Ag Center informed him that the salt level in the samples were three times higher than the amount it would take to kill a tree.[41]  In December of 2011, DEQ testing determined that Blevins' property had been significantly contaminated by the spill.[42]  Additional testing in February confirmed this finding and Blevins had several trees removed.[43]  On October 18, 2012, Blevins sued the Matthews, their insurer, and the owner of the pipeline.[44]

After the trial court denied the defendants' exception of prescription, the Second Circuit granted the Matthews' writ application.[45]  The Second Circuit held that prescription began to accrue in September of 2011, when the plaintiff developed the belief that the saltwater spill had contaminated his property.[46]

---

[38] *Id.*

[39] *Id.*

[40] *Id.* at 504–05.

[41] *Id.* at 505.

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.* at 507.

According to the Second Circuit, it did not matter that the extent of the saltwater damage was unclear at that time, or that Blevins did not know the extent of the contamination until December.[47]  Because Blevins had sufficient information in September to conclude that the saltwater had damaged his property, prescription began to accrue at that time.

Turning to the facts of this case, the Parish had reason to believe that the building was damaged long before they filed suit.  In late 2010, the Parish commissioned an independent evaluation of the building.  A report containing the results of this evaluation was issued on December 17, 2010 (the "Rimkus Report").  The Rimkus Report specifically detailed a long list of problems with the building.  The Rimkus Report attributed many of the problems to the architect and the general contractor.  Critical to this issue, the Rimkus Report specifically identified at least two omissions on the part of the structural engineer.  On page 10, the report faults the structural engineer for certain water intrusion problems because "[r]eview of the architect's structural drawings indicate that the structural engineer failed to identify a vertical step between the level 2 finished floor and the level 2 entrance balcony walking surfaces."[48]  On page 11, the Rimkus Report faults the engineer for failing to stamp certain drawings.[49]  In light of the foregoing, the Court concludes that prescription on the Parish's negligence claim against Southeast began to accrue on December 17, 2010.  When the Parish received the report it knew, at a minimum, that (1) the

---

[47] *Id.*

[48] Doc. 467-6, p.10.

[49] Doc. 467-6, p.11.

building was defective in at least one respect (i.e. it had significant moisture intrusion problems), (2) some of the water intrusion problems were attributed to design flaws in the building, and (3) the structural engineer was to be blamed, in at least some part, for the design flaws. This information should have led the Parish to conclude that it had a negligence claim against Southeast. As discussed in *Blevins*, the fact that the precise contours of the claim were not well defined does not prevent prescription from beginning to accrue.

The Parish asserts two counterarguments related to the issue of accrual. First, the Parish argues that it has only recently discovered additional acts of negligence for which Southeast is responsible. The Parish argues that these are distinct causes of action and that prescription did not begin to accrue on them until discovered by the Parish, after suit was already filed. Second, the Parish argues that prescription has not begun to accrue on its negligence claims against Southeast because Southeast's wrongs constitute a continuing tort under Louisiana law. Neither argument has merit.

The Parish's first argument is that they have discovered additional acts of negligence after suit was filed. The Parish claims that these additional acts of negligence each constitute separate actions with their own separate prescriptive period. Since the Parish did not discover these additional acts until after suit was filed, it claims that prescription on those acts never began to run. This argument, however, overlooks the constructive knowledge provision of article 3493. All of Southeast's alleged negligent acts were completed prior to the issuance of the Rimkus Report. The conclusions of the Rimkus Report were

11

sufficient to place the Parish on notice that the building had problems and that Southeast's negligence contributed, in at least some part, to the problems. Therefore, at the time the Rimkus Report was issued, the Parish acquired constructive knowledge of *all* of Southeast's negligent acts contributing to the building's defects.  This Court holds that prescription on all of the Parish's negligence actions began to run on December 17, 2010.  The fact that the Parish is just now acquiring *actual* knowledge of some of Southeast's alleged errors is irrelevant.

Second, the Parish argues that Southeast's alleged negligence constitutes a continuing tort under Louisiana law.  The Court disagrees.  In *Marin v. Exxon Mobil Corporation*, the Louisiana Supreme Court explained that, "the court must look to the operating cause of the injury sued upon and determine whether it is a continuous one giving rise to successive damages, or whether it is discontinuous and terminates, even though the damage persists and may progressively worsen."[50]  Here, the tort alleged, negligence in the performance of Southeast's engineering duties, clearly terminated when Southeast finished working on the property.  While the damages allegedly caused by Southeast's negligence may be continuing, the tort itself was completed long ago.  Accordingly, the continuing tort doctrine does not apply to this case.

Finally, the Parish contends that prescription has been interrupted by acknowledgment.  Article 3464 of the Civil Code provides that "prescription is interrupted when one acknowledges the right of the person against whom he had

---

[50] 48 So. 3d 234, 253 (La. 2010).

12

commenced to prescribe."  Prescription may be interrupted tacitly and there is no form requirement for an acknowledgment.[51] "A tacit acknowledgment occurs when a debtor performs acts of reparation or indemnity, makes an unconditional offer or payment, or lulls the creditor into believing he will not contest liability. Conversely, mere settlement offers or conditional payments, humanitarian or charitable gestures, and recognition of disputed claims will not constitute acknowledgments."[52]   "The courts have always favored compromise of disputes and thus been unwilling to treat settlement discussions as acknowledgments of liability."[53]

The Parish does not argue that Southeast ever acknowledged the Parish's negligence claims.   Instead, the Parish claims that acknowledgments by Southeast's co-obligors interrupted prescription as to Southeast.  Southeast does not dispute the basic principle underlying the Parish's argument: that an acknowledgment by one co-obligor interrupts prescription as to all other co-obligors.  Rather, Southeast argues that the Parish cannot prove that one of Southeast's co-obligors interrupted prescription by acknowledgment, at least not within the year prior to the filing of suit.

The Parish has offered over 250 pages of evidence demonstrating purported acts of acknowledgment.  The Court has doubts that this evidence is as significant as the Parish believes.  Nonetheless, the evidence suffers from one indisputable fatal flaw: of the 250 pages, almost all describe events that occurred

---

[51] *Mallett v. McNeal*, 939 So. 2d 1254, 1258 (La. 2006).

[52] *Demma v. Auto. Club Inter-Ins. Exch.*, 15 So. 3d 95, 99 (La. 2009).

[53] *Leija v. Ford Motor Co.*, 161 So. 3d 1020, 1025 (La. App. 2 Cir. 2015).

more than one year before the Parish filed its suit.  Even assuming that the Parish could show that one of Southeast's alleged co-obligors interrupted prescription by acknowledgment, prescription begins to run anew following each acknowledgment.[54]  Therefore, even if the Court assumes that all of the Parish's purported evidence predating May 28, 2012 constituted acts of acknowledgment, the Parish must still demonstrate that an act of acknowledgment occurred within one year of it filing suit.

The Parish has offered two documents that are dated after May 28, 2012. These two documents, letters dated June 1, 2012 and June 8, 2012, were sent to counsel for Hanover, apparently at his request.   From the content of the letters it appears that Hanover's counsel invited several contractors unrelated to this dispute to submit remediation proposals for the building.  The letters represent the contractors' responses to that invitation.  These letters do not constitute acknowledgments for several reasons.  First, they are not communications generated by a co-obligor of Southeast.  Rather, they are proposals submitted by parties totally unaffiliated with this dispute.  They cannot possibly constitute an acknowledgment by one of Southeast's alleged co-obligors.  Additionally, these letters are devoid of any content that could possibly lead to the conclusion that someone was liable to the Parish for anything.  They are nothing more than construction estimates.  Finally, the two communications were not made to the Parish.  An acknowledgment is only effective to the extent that it is made to the

---

[54] *Gary v. Camden Fire Ins. Co.*, 676 So. 2d 553, 556 (La. 1996).

creditor.[55]  The letters simply were not addressed to the Parish.  Because the two letters represent the only proffered acts of acknowledgment within the year prior to filing suit, the Parish cannot avail itself of the defense of acknowledgment.

The Parish's last attempt to resurrect its negligence claim is its assertion of *contra non valentem*.  *Contra non valentem* is a jurisprudential doctrine that creates a limited exception to the rules of prescription.[56]  At its core, the doctrine provides that prescription does not run against a plaintiff who is unable to exercise his cause of action when it accrues.[57]  Because *contra non valentem* is a judicial exception to the statutory rule of prescription, the doctrine is strictly construed and its benefits are only extended up to the time that the plaintiff has actual or constructive knowledge of the tortuous act.[58]  The doctrine of *contra non valentem* suspends prescription where the circumstances of the case fall into one of four narrow categories:

> (1) where some legal cause prevented the courts or their officers from taking cognizance of or acting on the plaintiff's behalf; (2) where some condition coupled with a contract or connected with the proceedings prevented the creditor from suing for action; (3) where the debtor did some act effectively to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.[59]

---

[55] *Richard Guthrie & Associates v. Stone*, 562 So. 2d 1071, 1073 (La. App. 4 Cir. 1990) (*citing Flowers v. U.S. Fidelity and Guaranty Co.*, 381 So.2d 378 (La. 1979).

[56] *Corsey v. State, Through Dep't of Corr.*, 375 So. 2d 1319, 1321 (La. 1979).

[57] *Id.*

[58] *Terrebonne Parish School Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 320 (5th Cir. 2002).

[59] *Huddleston v. Huddleston*, 106 So.3d 567, 573 (La. App. 2 Cir. 2012).

15

The Parish argues that the third and fourth categories are present. To prevail on the third category, the Parish must establish that Southeast performed some act to prevent the Parish from filing suit. The Parish has presented no evidence supporting such a finding. Indeed, the Parish relies on a vague assertion that "discovery is ongoing and may reveal evidence that Southeast's acts have prevented" the Parish from knowing the nature and extent of Southeast's negligence. Unsupported allegations are not sufficient to defeat summary judgement.[60] The fourth category, which provides relief where the cause of action is not reasonably knowable to the plaintiff, does not apply. The Court has previously found that the Parish had constructive knowledge of its action in December of 2010. Accordingly, Court concludes that the defense of *contra non valentem* is not available to the Parish.

Finally, the Parish argues that it has a substantive right to a hearing on the issue of prescription under Louisiana law. According to the Parish, because it has the right to present evidence on this issue, judicial efficiency dictates that the Court defer consideration of the prescription issue until trial. The Parish bases its argument on Louisiana Code of Civil Procedure article 931. Article 931 provides that "[o]n the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition." The Parish argues that article 931 confers a substantive right to a contradictory hearing on the defense of prescription and that the Court is bound

---

[60] *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995).

16

to extend that right in federal proceedings under *Erie*.[61]

The Parish's argument misses the mark.  Even assuming that its *Erie* argument is correct, the Parish ignores the fact that article 931 does not, on its face, apply to prescription.  Instead, it governs the disposition of the peremptory exception.  Southeast has elected to file a motion for summary judgment on the prescription issue.  "The procedural propriety of a motion for summary judgment to assert a plea of prescription has never been seriously questioned by [Louisiana] courts and in fact has been expressly approved, especially when there is no dispute as to the facts upon which the defense is based."[62]  In fact, the Louisiana Supreme Court has remarked that, where there are no genuine disputes of material fact, "summary judgment is particularly appropriate for asserting a plea of prescription."[63]  Accordingly, Southeast could have asserted this defense by summary judgment in Louisiana state court.  Had Southeast done so, the Parish would have enjoyed no right to present evidence at a substantive hearing, and therefore can assert no such right here.[64]  Therefore, the Court concludes that there is no procedural obstacle to the grant of Southeast's Motion.

As a result of these findings, the Court holds that the Parish had

---

[61] *See Erie Railroad v. Tompkins*, 304 U.S. 64 (1938).

[62] *Bardwell v. Faust*, 962 So. 2d 13, 18 (La. App. 1 Cir. 2007); *see also Hogg v. Chevron USA, Inc.*, 45 So. 3d 991, 997 (La. 2010) ("Although typically asserted through the procedural vehicle of the peremptory exception, the defense of prescription may also be raised by motion for summary judgment.").

[63] *Hogg*, 45 So. 3d at 997 n.5.

[64] The Court also notes that the Parish has not cited a single case in which a federal court applied article 931.

constructive knowledge of its negligence claim against Southeast upon receipt of the Rimkus Report on December 17, 2010.  Prescription began to accrue at that time.  The Parish did not file suit until May 29, 2013.  The Parish's arguments of acknowledgment, continuing tort and *contra non valentem* are without merit.  Accordingly, the Court holds that the Parish's negligence claim against Southeast is prescribed and that claim is dismissed with prejudice.

## II. The Parish's Motion for Discovery

The Parish has filed a Motion for Discovery on the issue of prescription. The Parish argues that it is entitled to additional discovery because it cannot adequately oppose Southeast's Motion.  The Court disagrees.  The undisputed evidence shows that the Parish acquired constructive knowledge of the problems with the building on December 17, 2010.  No amount of additional discovery can change this conclusion.  While the Parish's intended discovery may reveal additional acts of negligence on the part of Southeast, it simply cannot revive its case.  Under Louisiana law, the Parish was charged with knowledge of all of Southeast's negligence at the moment the Parish received the Rimkus Report. The fact that the Parish failed to acquire actual knowledge of the negligence until now is of no moment.  Prescription began to run in December of 2010.

The Parish also seeks discovery regarding its defenses of acknowledgment, continuing tort, and *contra non valentem*.  For the reasons previously set out, the Court finds that continuing tort and *contra non valentem* are inapplicable as a matter of law and no amount of discovery can remedy that.  Additionally, the Parish has not offered any persuasive argument that additional discovery would

change the Court's conclusion as to the defense of acknowledgment. An acknowledgment only interrupts prescription to the extent that it is made to the creditor.[65] Any evidence of acknowledgment is necessarily in the hands of the Parish and any additional discovery is futile. Accordingly, the Parish's Motion for Discovery is denied.

### III. The Parish's Breach of Contract Claim

Southeast also moves to dismiss the Parish's breach of contract claim against it. The Parish's breach of contract claim is premised on its argument that it is a third-party beneficiary to the contract between Sizeler and Southeast. Southeast argues that the Parish cannot meet its burden to prove that it is a third-party beneficiary.

Louisiana law permits the parties to a contract to stipulate a benefit for a third-party.[66] A third-party beneficiary of a contract acquires the right to demand performance directly from the obligor.[67] Louisiana courts will hold that a contract stipulates a benefit in favor of a third-party where: "1) the stipulation for a third-party is manifestly clear; 2) there is certainty as to the benefit provided the third-party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee."[68] The contract must confer a benefit

---

[65] *Richard Guthrie & Associates*, 562 So. 2d at 1073.

[66] La. Civ. Code art. 1978. This is referred to interchangeably as a stipulation *pour autrui* or third-party beneficiary. *Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary*, 939 So. 2d 1206, 1211 (La. 2006).

[67] La. Civ. Code art. 1981.

[68] *Joseph*, 939 So. 2d at 1212.

19

directly on the third-party.[69]

Under nearly identical circumstances, the Louisiana Supreme Court held that the owner of a building is a third-party beneficiary to a contract between an architect and an engineer related to the construction of that building.[70]   In *Simoni*, the State contracted with Simoni, an architect, for the design of an office building.[71]   Simoni hired Burkhalter, an engineer, to design certain elements of the building.[72]   After the State discovered defects in the building it filed suit against, *inter alia*, Simoni and Burkhalter for breach of contract.[73]   The parties raised the same argument made here.[74]   On appeal, the Louisiana Supreme Court held that, as the ultimate owner of the building, the State was a third-party beneficiary to the contract between Simoni and Burkhalter.[75]   Specifically, the Court reasoned that "the engineer defendant owed an obligation concurrently both to the architects Simoni, with whom he had a contract, and also to [the State], for whose benefit and advantage the contract between Simoni and himself had been made."[76]

The facts of this case compel the same conclusion as was reached by the Supreme Court in *Simoni*.   The contract between Sizeler and Southeast

---

[69] *Id*. at 1214.

[70] *State ex rel. Guste v. Simoni, Heck & Associates*, 331 So. 2d 478, 483 (La. 1976).

[71] *Id*. at 480–81.

[72] *Id*.

[73] *Id*. at 480.

[74] *Id*.

[75] *Id*. at 483.

[76] *Id*. at 482.

explicitly provided that Southeast was to perform engineering services related to the construction of the Boothville-Venice Community Center.  The benefit in favor of the Parish was manifestly clear.  Indeed, the benefit to the Parish (the design and ultimate construction of the building) was the sole cause for the contract.  Moreover, there is certainty as to the benefit provided to the Parish.  Southeast's primary obligation under its contract was to provide structural engineering services for the Parish's building.  Finally, the benefit to the Parish was not merely incidental to the contract.  Rather, the benefit to the Parish was the sole object of the agreement.  Therefore, as in *Simoni*, the Court concludes that the Parish was a third-party beneficiary to the contract between Sizeler and Southeast.  Southeast's Motion for Summary Judgment on this issue is denied.

## CONCLUSION

For the foregoing reasons, Southeast's Motion for Summary Judgment is GRANTED IN PART, the Parish's Motion for Discovery is DENIED, and the Parish's negligence claims against Southeast are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 10th day of July, 2015.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

21