## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**HANOVER INSURANCE COMPANY**                     **CIVIL ACTION**

**VERSUS**                                        **NO. 12–1680**

**PLAQUEMINES PARISH GOVERNMENT**                 **SECTION "H"(5)**

## ORDER AND REASONS

Before the Court is a Motion for Partial Summary Judgment (Doc. 500). For the following reasons, the Motion is GRANTED. Southeast Engineers, LLC's liability to Sizeler, Thompson, Brown Architects and XL Specialty Insurance Company is limited to $50,000.00, and Sizeler's claim for attorney's fees and defense costs is DISMISSED WITH PREJUDICE.

## BACKGROUND

In 2008, Defendant Plaquemines Parish ("the Parish") hired Catco General Contractors to construct a community center in Boothville, LA. Plaintiff Hanover Insurance Company issued a performance bond for the project. Due to several disputes regarding the quality of the completed work, the Parish refused

to tender the final payment on the construction contract to Catco.  Catco in turn refused to pay certain subcontractors on the project.  Those subcontractors filed claims with Hanover seeking amounts due on the subcontracts.  Hanover paid those claims and instituted the instant litigation.  Hanover claims that the Parish wrongfully withheld the final payment from Catco, resulting in several hundred thousand dollars in various claims against it.

On May 29, 2013, in response to Hanover's Complaint, the Parish asserted a counterclaim against Hanover and a third-party demand against Catco and several other entities who were involved in the design of the community center. The Parish's counterclaim and third-party demand allege that Catco failed to complete the construction according to specifications.  On June 21, 2013, in response to the Parish's counterclaim, Hanover filed a third-party demand against several of the subcontractors involved in the construction of the community center.  Since then most of the subcontractors involved in the design and construction of the community center have been added to this litigation. There are now more than 30 parties and dozens of claims.

Presently before the Court are Sizeler, Thompson, Brown Architects' ("Sizeler") claims against Southeast Engineers, LLC ("Southeast").  The Parish hired Sizeler to create the architectural drawings for the community center. Sizeler, in turn, hired Southeast to provide structural engineering services for the project.  The Parish has asserted claims against Sizeler and Sizeler's insurer XL Speciality Insurance Company ("XL") for breach of contract and negligence, alleging that Sizeler failed to properly design the community center.  In response

to the Parish's claim against it, Sizeler has sued Southeast. Sizeler alleges that Southeast is responsible for some or all of Sizeler's alleged liability to the Parish because Southeast failed to properly perform the services required under its contract with Sizeler. XL has also asserted a claim against Southeast. XL alleges that, if it is forced to pay damages to the Parish in its capacity as Sizeler's insurer, it is subrogated to Sizeler's claim against Southeast.

In this Motion, Southeast moves the Court to enforce a provision of its contract with Sizeler that purports to limit Southeast's liability to Sizeler in the event that Southeast breaches the contract. Southeast also contends that this provision necessarily limits XL's subrogation claim. Sizeler argues that the contract is unenforceable and XL argues that, as a nonparty to the contract, the contract's terms cannot be enforced against it.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the

---

[1] Fed. R. Civ. P. 56(c) (2012).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

3

Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4]  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5]  "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6]  "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7]  Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

## LAW AND ANALYSIS

---

[3] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997).

[4] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[6] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[7] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[8] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

4

This Motion presents three questions for the Court's consideration: (1) is the contract enforceable against Sizeler?; (2) if so, is the limitation of liability provision enforceable against Sizeler?; and (3) if the limitation provision is enforceable against Sizeler, can it also be enforced against XL?  The Court will consider each question in turn.

## I.  Is the Contract Enforceable Against Sizeler?

Sizeler contends that the contract between it and Southeast is unenforceable because Lisa Quarls, the Sizeler associate who signed the contract, lacked the authority to bind Sizeler to the contract's terms.  Although a corporation [such as Sizeler] is a juridical person with a personality distinct from that of its members it only acts through its officers, employees, and other agents."[9]  In deciding whether Quarls had authority to act on behalf of Sizeler, this Court looks to Louisiana's law of mandate.[10]  "A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal."[11]  Subject to certain exceptions not applicable here, a contract of mandate generally need not be in any particular form.[12]  Louisiana courts use the term agent and mandatary interchangeably.[13]  "An agent's power or authority is composed of his actual

---

[9] *Kevin Associates, L.L.C. v. Crawford*, 865 So. 2d 34, 41 (La. 2004).

[10] La. Civ. Code art. 2989, *et seq.*

[11] La. Civ. Code art. 2989.

[12] La. Civ. Code art. 2993.  *See also* La. Civ. Code art. 2997 (describing certain transactions for which express authority is required).

[13] *See Blanchard v. Ogima*, 215 So. 2d 902, 905 (La. 1968); *Hopping v. Louisiana Horticulture Comm'n*, 509 So. 2d 751, 762 (La. App. 1 Cir. 1987).

authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct."[14]   A principal is bound by all acts done by an agent within the agent's authority.[15]

Sizeler argues that Quarls lacked actual authority to contract with Southeast and that the doctrine of apparent authority no longer exists in Louisiana.   In support of the first argument, Sizeler has attached an affidavit from one of Sizeler's principals stating that Quarls did not have authority to execute the contract.   At the summary judgment stage, the Court finds that this is sufficient to establish a factual dispute as to whether Quarls had actual authority.   The Court must construe all disputed facts in favor of the nonmoving party.[16]   Therefore the Court will assume, for the purposes of this Motion, that Quarls lacked actual authority to execute the contract.

Sizeler's next argument, that apparent authority no longer exists in Louisiana, is without merit.   In support of this argument, Sizeler cites a single Louisiana case, *Holloway v. Shelter Mutual Insurance Company*.[17]   The *Holloway* Court observed that the apparent authority doctrine had been applied in Louisiana for several decades, but concluded that the 1997 amendments to the mandate articles in the Louisiana Civil Code had legislatively repealed the doctrine.[18]   As far as this Court can tell, however, no other Louisiana court has

---

[14] *Boulos v. Morrison*, 503 So. 2d 1, 3 (La. 1987).

[15] *Id.*

[16] *Coleman*, 113 F.3d at 528.

[17] 861 So. 2d 763 (La. App. 3 Cir. 2003)

[18] *Id.* at 769–70.

agreed with *Holloway*.  Instead, every Louisiana appellate court, including the circuit that decided *Holloway*, has applied the apparent authority doctrine after the 1997 amendments without question.[19]  Moreover, Louisiana's leading commentator on the subject concluded that the 1997 amendments actually legislatively *adopted* the doctrine.[20]  Finally, the only federal court to consider *Holloway* dismissed it as an anomaly.[21]  In this Court's view, there is simply no doubt that the doctrine of apparent authority remains alive and well in Louisiana.

"Apparent authority is a doctrine by which an agent is empowered to bind his principal in a transaction with a third person . . . although the principal has not actually delegated this authority to the agent."[22]  "In order for the doctrine of apparent authority to apply, the principal must first act to manifest the alleged mandatary's authority to an innocent third party.  Then, the third party

---

[19] *See, e.g., Walton Const. Co. v. G.M. Horne & Co.*, 984 So. 2d 827, 835 (La. App. 1 Cir. 2008) (explicitly holding that apparent authority survived the 1997 amendments); *Builders Supply of Ruston, Inc. v. Qualls*, 750 So. 2d 427, 431 (La. App. 2 Cir. 2000) (applying the doctrine of apparent authority); *Grabowski v. Smith & Nephew, Inc.*, 149 So. 3d 899, 913 (La. App. 3 Cir. 2014) (same); *Lifetime Const., L.L.C. v. Lake Marina Tower Condo. Ass'n, Inc.*, 117 So. 3d 109, 114 (La. App. 4 Cir. 2013) (same); *Color Stone Int'l, Inc. v. Last Chance CDP, LLC*, 986 So. 2d 707, 713 (La. App. 5 Cir. 2008) (same).

[20] 8 La. Civ. L. Treatise, Business Organizations § 33.08 ("As a result of the 1997 amendments, the current Civil Code does recognize apparent authority, and it does provide explicitly that an agent who exceeds his authority is liable to the principal for any loss the principal sustains as a result.").

[21] *Hendrickson v. Meeks Disposal Co.*, No. 08-2744, 2008 WL 4657268, at *2 n.2 (E.D. La. Oct. 20, 2008).

[22] *Tedesco v. Gentry Dev., Inc.*, 540 So. 2d 960, 963 (La. 1989).

must reasonably rely on the mandatary's manifested authority."[23]   The manifestation of authority need not be express.  Rather, "apparent agency arises when the principal has acted so as to give an innocent third party a reasonable belief that the agent had the authority to act for the principal."[24]  "One must look from the viewpoint of the third party to determine whether an apparent agency has been created."[25]  "The burden of proving apparent authority is on the party seeking to bind the principal."[26]

The facts surrounding the execution of the contract at issue are undisputed.  Lisa Quarls, an associate architect employed by Sizeler, contacted Southeast and requested engineering services for the community center project. Southeast forwarded Quarls a proposal outlining the scope of Southeast's work, the price of its services, and several terms and conditions associated with the agreement.  Quarls signed the contract, purportedly on behalf of Sizeler, and returned it to Southeast.  The contract required an initial payment of $7,081.43, which Sizeler paid on the same day that Quarls executed the contract.  As Southeast performed work on the contract, Sizeler promptly paid its invoices. Sizeler has alleged in this litigation that it had a contract with Southeast.[27] Until it filed an opposition to this Motion, Sizeler never indicated to the Court

---

[23] *Jefferson Parish Hosp. Serv. Dist. No. 2 v. K & W Diners, LLC*, 65 So. 3d 662, 668 (La. App. 5 Cir. 2011).

[24] *Barrilleaux v. Franklin Found. Hosp.*, 683 So. 2d 348, 354 (La. App. 1 Cir. 1996).

[25] *Id.*

[26] *Bamburg Steel Buildings, Inc. v. Lawrence Gen. Corp.*, 817 So. 2d 427, 432 (La. App. 2 Cir. 2002).

[27] Doc. 68, pp. 5–7 (alleging that Sizeler had a contract with Southeast and asserting a breach of contract claim against Southeast).

or the parties that it thought the contract was unenforceable.  Sizeler argues for the first time in its opposition that Quarls lacked authority to bind Sizeler.

To prevail on its argument that Quarls had apparent authority to execute the contract, Southeast must first prove that Sizeler acted in some way to demonstrate that Quarls had authority to bind Sizeler to the contract's terms.[28] Southeast has not provided any such evidence in connection with this Motion. In fact, the Court has been presented with no evidence regarding the actions of Sizeler before the contract was signed.  Accordingly, the Court must conclude that Southeast has failed to meet its burden to prove that Quarls had apparent authority to execute the contract.

This conclusion is not, however, fatal to Southeast's Motion.  Southeast also argues that Sizeler ratified the contract.  "Ratification is a declaration whereby a person gives his consent to an obligation incurred on his behalf by another without authority."[29]  Ratification may be either express or tacit.[30] "Tacit ratification results when a person, with knowledge of an obligation incurred on his behalf by another, accepts the benefit of that obligation."[31]  A tacit ratification results when a principal of a corporation acquires knowledge of an unauthorized contract and fails to repudiate it within a reasonable time.[32] A principal may also ratify an unauthorized contract if he accepts benefits of the

---

[28] *Barrilleaux*, 683 So. 2d at 354.

[29] La. Civ. Code art. 1843.

[30] *Frazier v. Harper*, 600 So. 2d 59, 62 (La. 1992).

[31] *Id.*

[32] *3 A's Towing Co. v. P & A Well Serv., Inc.*, 642 F.2d 756, 758 n.3 (5th Cir. 1981).

contract after acquiring knowledge of its existence.[33]

The Court has no difficulty concluding that Sizeler ratified the contract. The contract provided that an initial payment of $7,081.43 was due upon signing of the contract. Sizeler paid this exact amount on the same day that Quarls signed the contract. This Court refuses to believe that the payment was a coincidence. Instead, it is clear that Sizeler was fulfilling one of its obligations under the agreement. The contract was signed on March 13, 2008 but Sizeler did not question its enforceability until May 19, 2015. Sizeler does not argue that it was unaware of the contract's existence before May of 2015. Rather, it seems clear to the Court that Sizeler availed itself of the benefits of the contract for seven years. When Southeast sought to enforce a provision that was unfavorable to Sizeler, Sizeler insisted that the contract was not binding on it. This is precisely the situation that the ratification rule was created to prevent. The Court holds that Sizeler's knowledge of the contract in 2008, combined with its failure to repudiate it for more than seven years, results in the conclusion that Sizeler has ratified the contract. Accordingly, the contract is enforceable against Sizeler.

## II. Is the Limitation of Liability Provision Enforceable Against Sizeler?

Having found that the contract itself is enforceable, the Court turns now to the specific provision at issue. Southeast asks the Court to enforce a provision in the contract that limits its liability. The contract expressly invokes Louisiana

---

[33] *Id.*

law. "According to the Louisiana Civil Code, '[i]nterpretation of a contract is the determination of the common intent of the parties.'"[34] In probing this intent, a court looks first to the four corners of the contract.[35] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[36] "Each provision of a contract must be interpreted in light of the other provisions, and a provision susceptible of different meanings must be interpreted with a meaning that renders it effective rather than one which renders it ineffective."[37] "When a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties."[38] The determination of whether a contract is clear or ambiguous is a question of law.[39] "When a contract can be interpreted from the four corners of the instrument, the question of contractual interpretation is answered as a matter of law, and summary judgment is appropriate."[40] If, on the other hand, the court makes a threshold finding that

---

[34] *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007) (quoting La. Civ. Code art. 2045).

[35] *See John Paul Saprir, LLC v. Yum! Brands, Inc.*, 106 So. 3d 646, 652 (La. App. 4 Cir. 2012) (citation omitted).

[36] La. Civ. Code art. 2046.

[37] *Lis v. Hamilton*, 652 So. 3d 1327, 1330 (La. 1995) (citations omitted).

[38] *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 112 So. 3d 187, 192 (La. 2013).

[39] *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 764 (La. 1994) (citation omitted).

[40] *Mobil Exploration & Producing U.S. Inc. v. Certain Underwriters Subscribing to Cover Note 95-3317(A)*, 837 So. 2d 11, 24 (La. App. 1 Cir. 2002) (citation omitted).

11

the contract is ambiguous, an issue of material fact exists as to the intention of the parties, and summary judgment is rarely appropriate.[41]

The applicable contract provision reads:

> To the fullest extent permitted by law, Owner/Client [Sizeler] and SE (1) waive against each other, and the other's employees, officers, directors, agents, insurers, partners, and consultants, any and all claims for or entitlement to special, incidental, indirect, or consequential damages arising out of, resulting from, or in any way related to the Project, and (2) agree, that SE's total liability to Owner/Client [Sizeler] under this Agreement shall be limited to $50,000 or the total amount of compensation received by SE, whichever is greater.[42]

Southeast first argues that the contract clearly and unambiguously limits its liability to Sizeler. The Court agrees. The contract explicitly provides that Southeast "total liability to [Sizeler]" is limited to $50,000.[43] Absent its argument about Quarls's authority to execute the contract, Sizeler makes no attempt to argue that this provision is legally unenforceable. Nor could it. As one Louisiana court has explained, "it is well settled in our jurisprudence that limitation of liability clauses . . . are valid and not against public policy."[44]

---

[41] *See Orleans Parish Sch. Bd. v. Lexington Ins. Co.*, 118 So. 3d 1203, 1212 (La. App. 4 Cir. 2013) (citation omitted).

[42] Doc. 242–1, p. 5. The contract defines "Owner/Client" as Sizeler and "SE" as Southeast.

[43] There is no dispute that the total amount received by Southeast under the contract was less than $50,000. Accordingly, Southeast requests that the Court order that its liability to Sizeler is limited to $50,000.

[44] *Isadore v. Interface Sec. Sys.*, 58 So. 3d 1071, 1074 n.4 (La. App. 3 Cir. 2011) (collecting cases).

Therefore, the Court concludes that the limitation of liability provision is valid and enforceable and that Southeast's total liability to Sizeler in this litigation is limited to the sum of $50,000.[45]

Southeast's second argument is more specific.  The contract provides that Sizeler may not recover any "special, incidental, indirect, or consequential damages."  Southeast argues that this language necessarily precludes Sizeler's claims for defense costs and attorney's fees.  The Court agrees.  It is clear that the parties intended to waive any claims for indirect or consequential damages incurred by Sizeler in the event that Southeast failed to perform.  Thus, while Sizeler may recover from Southeast any damages directly caused by Southeast's failure to perform, it may not recover from Southeast any consequential damages it sustained, including defense costs and attorney's fees.  Accordingly, the Court will grant Southeast's Motion on this issue.

**III. Is the Limitation of Liability Provision Enforceable Against XL?**

Sizeler's insurer, XL, also asserts a claim against Southeast.  XL claims to be subrogated to Sizeler's rights against Southeast by virtue of the insurance contract between XL and Sizeler.  XL argues that, as a nonparty to the contract between Sizeler and Southeast, it cannot be bound by its terms.  XL's argument, however, overlooks basic principles of subrogation.

---

[45] Of course, it has not yet been established that Southeast is liable to any of the parties. Sizeler, and any other party that has asserted a claim against Southeast, remains obligated to prove that Southeast is liable to it.

"Subrogation is the substitution of one person to the rights of another."[46] Subrogation can arise either by contract or by operation of law.[47]  XL alleges that, if Sizeler is ultimately liable to the Parish and XL pays the Parish for Sizeler's liability, then XL will be subrogated to Sizeler's claims against Southeast.  No party questions this claim.  Indeed, Louisiana courts routinely permit insurers to assert such claims.[48]  XL, however, claims that the rights it acquires through subrogation are not limited by Sizeler's contract with Southeast.  XL is incorrect.

XL's argument that it is not bound by the limitation of liability clause ignores an important principle of Louisiana subrogation law.  "A subrogee acquires no greater rights than those possessed by its subrogor and is subject to all limitations applicable to the original claim of the subrogor."[49]  Accordingly, any rights that XL acquires through subrogation are subject to the same limitations that existed when those rights were owned by Sizeler.  The Court has already held that Sizeler's claim against Southeast is limited by the contract.  Pursuant to Louisiana subrogation law, that same limitation must also apply to XL's subrogation claim.  The Court, therefore, holds that the limitation of liability clause is enforceable against XL.

---

[46] *A. Copeland Enterprises, Inc. v. Slidell Mem'l Hosp.*, 657 So. 2d 1292, 1296 (La. 1995).

[47] La. Civ. Code art. 1825.

[48] *Gray Ins. Co. v. Old Tyme Builders, Inc.*, 878 So. 2d 603, 607 (La. App. 1 Cir. 2004).

[49] *Id.*

14

**CONCLUSION**

For the foregoing reasons, Southeast's Motion for Partial Summary Judgment is GRANTED.  In the event that Sizeler and XL prevail on their claims against Southeast, Southeast's liability to Sizeler and XL is limited to $50,000, and Sizeler's claim for attorney's fees and defense costs is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 15th day of July, 2015.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

15