UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HANOVER INSURANCE COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12–1680** |
| **PLAQUEMINES PARISH GOVERNMENT** | **SECTION "H"(5)** |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment (Doc. 552).  For the following reasons, the Motion is GRANTED IN PART.  The Parish's and Hanover's claims against Praetorian Specialty Insurance Company are DISMISSED WITH PREJUDICE.

## BACKGROUND

The facts and procedural history of this case are long, complex, and have been detailed in several of the Court's prior orders.[1]  Familiarity with those

---

[1] *See e.g.*, *Hanover Ins. Co. v. Plaquemines Parish Gov't*, 304 F.R.D. 494 (E.D. La. 2015); *Hanover Ins. Co. v. Plaquemines Parish Gov't*, No. 12–1680, 2015 WL 4167745 (E.D. La. July 9, 2015).

1

orders is assumed.

Presently before the Court are the Plaquemines Parish's ("the Parish" and Hanover Insurance Company's ("Hanover") claims against Praetorian Specialty Insurance Company ("Praetorian") and QBE Specialty Insurance Company ("QBE") (collectively "the Insurers").  Praetorian and QBE both issued commercial general liability ("CGL") policies to Catco General Contractors, LLC ("Catco").  Praetorian's policy was in effect from June 1, 2008–June 1, 2009 and QBE's policy was in effect from June 1, 2009–June 1, 2010.  Both the Parish and Hanover have asserted claims against the Insurers seeking coverage under the policies as a result of Catco's alleged failure to properly construct the building.  Praetorian and QBE now move for summary judgment, claiming that their polices exclude coverage for the claims asserted against Catco.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2]  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In determining whether the movant is entitled to summary judgment, the

---

[2] Fed. R. Civ. P. 56(c) (2012).
[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[4] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[6] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[7] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[8] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

## LAW AND ANALYSIS

---

[4] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997).

[5] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[7] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[8] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[9] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

The Insurers argue that two interrelated policy provisions bar coverage for the claims asserted against Catco.  Because the language of the two policies is identical, the Court first discusses the proper interpretation of the provisions at issue and then the merits of the Insurers' Motion.

**I. The Policy Provisions**

The Insurers rely on two policy provisions, the "work product" exclusion and the "products-completed operations hazard" ("PCOH") provision.  The work product exclusion provides that coverage is not extended to property damage to:

> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
> ....
> Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."[10]

In *Supreme Services & Specialty Company v. Sonny Greer, Inc.*, the Louisiana Supreme Court examined the effect of identically worded provisions.[11] *Supreme Services* explained that "the work product exclusion reflects the insurance company's intent to avoid the possibility that coverage under a CGL policy will be used to repair and replace the insured's defective products and faulty workmanship.  A CGL policy is not written to guarantee the quality of the

---

[10] Doc. 552–19, p. 16.

[11] 958 So. 2d 634 (La. 2007).

4

insured's work or product."[12] Thus, the work product exclusion unambiguously excludes from coverage any obligation of the contractor to repair or replace the defective work product of the contractor or his subcontractors.[13]

The PCOH provision addresses a different obligation. It provides that:

> a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
> > (1) Products that are still in your physical possession; or
> > (2) Work that has not yet been completed or abandoned.
> 
> b. "Your work" will be deemed completed at the earliest of the following times:
> > (1) When all of the work called for in your contract has been completed.
> > (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.
> > (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
> 
> Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.[14]

As explained in *Supreme Services*, the PCOH provision addresses the insurer's liability for any damage caused as a *consequence* of the contractor's faulty work, other than the repair or replacement of the faulty work itself.[15] The

---

[12] *Supreme Services*, 958 So. 2d at 641.

[13] *Id.* at 644.

[14] Doc. 552–19, p. 26.

[15] *Supreme Services*, 958 So. 2d at 645.

PCOH provision excludes coverage for damages caused by the defective work of the contractor and its subcontractors but only while the contractor's work is ongoing.[16] Once the contractor's work is completed, the PCOH provision operates to *provide* coverage for all damages caused by a contractor's faulty work, except the obligation to repair or replace the faulty work itself.[17] The Louisiana Civil Law Treatise includes an excellent example illustrating the operation of the PCOH provision:

> For example, suppose the insured contracted to make and install a sign on a commercial building. After the work was completed, the sign fell due to defective installation, causing damage to the sign, the building's canopy and a parked car and also bodily injury to a pedestrian. The insurer covering the [PCOH] would cover all claims for bodily injury and property damage except the contractor's responsibility to repair and replace the sign, coverage for which would be excluded under the product and work exclusions.[18]

Of course, if the sign in the example had fallen before the contractor finished installing it, the CGL policy would afford no coverage for any of the damages.[19]

Therefore, under the reasoning of *Supreme Services*, the Insurers' policies extend different coverage to Catco depending on whether the community center was completed. While the project remains incomplete, the policies unambiguously exclude coverage for all damages arising out of Catco's failure, or the failure of any of Catco's subcontractors, to properly complete their work,

---

[16] *Id.*

[17] *Id.*

[18] 15 LA. CIV. L. TREATISE, INSURANCE LAW & PRACTICE § 6:9 n.34 (4th ed.).

[19] *See Supreme Services*, 958 So. 2d at 645.

including the cost to repair or replace the faulty workmanship. Once the project is completed, however, the policies provide coverage for any damages caused by Catco's faulty work (or the faulty work of Catco's subcontractors), except the cost to repair or replace the faulty work itself. In light of this conclusion, the Court turns to the merits of the Motion.[20]

**II. The Merits**

*A. QBE*

As previously outlined, QBE does owe coverage to Catco if the project was completed. Once the project is deemed completed, QBE's policy covers all damages caused by Catco's defective work except the cost to repair or replace the defective work. If, however, the building was never completed, QBE owes no coverage. QBE argues that the building was never completed and that it owes Catco no coverage.

The policy provides that Catco's work will be deemed completed at the earliest of three possible times. The first, "when all of the work called for in [Catco's] contract has been completed,"[21] is the only one applicable here.[22] It is important to note that Catco's policy provides that completed work that still

---

[20] The Parish, citing to pre-*Supreme Services* law, argues that the work product exclusion and the PCOH provision are ambiguous. This contention was specifically rejected in *Supreme Services*. *Supreme Services*, 958 So. 2d at 643. Accordingly, the Court declines to entertain this argument here.

[21] Doc. 552–19, p. 26.

[22] The second is not applicable here because it relates to work at multiple sites and there is no indication that the community center project involved more than one physical site. The third condition, when the project has been put to its intended use, does not apply either. It is undisputed that the community center has not been put to intended use.

7

requires repair or replacement is deemed complete for the purpose of the policy.[23]

In order to prevail on this Motion, QBE must establish that Catco completed all of the work required by its contract. The Court finds that there is a genuine dispute of material fact regarding whether or not Catco completed the work. While the building allegedly has a number of problems that require repair work, QBE has not pointed to any specific work that remains incomplete. Therefore, summary judgment is denied as to QBE.

### *B. Praetorian*

The Court reaches a different result with regard to Praetorian. Praetorian's policy was in effect from June 1, 2008–June 1, 2009. As the Court has previously explained Praetorian owed no coverage as long as the building remained incomplete. There is no dispute that, on June 1, 2009, the building was still very much under construction. Accordingly, because the building was not completed during the Praetorian policy period, coverage never attached. The Parish's and Hanover's claims against Praetorian are DISMISSED WITH PREJUDICE.

---

[23] *Id.*

## CONCLUSION

For the foregoing reasons, the Motion is GRANTED IN PART. The Parish's and Hanover's claims against Praetorian Specialty Insurance Company are DISMISSED WITH PREJUDICE. The Motion is DENIED as to QBE Specialty Insurance Company.

New Orleans, Louisiana, this 16th day of July, 2015.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**