UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**HANOVER INSURANCE COMPANY**                          **CIVIL ACTION**

**VERSUS**                                             **NO. 12–1680**

**PLAQUEMINES PARISH GOVERNMENT**                      **SECTION "H"(5)**

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment (Doc. 550) and a Motion for Discovery (Doc. 720). For the following reasons, the Motion for Summary Judgment is DENIED, and the Motion for Discovery is GRANTED.

## BACKGROUND

The facts and procedural history of this case are long, complex, and have been detailed in several of the Court's prior orders.[1] Familiarity with those orders is assumed.

---

[1] *See, e.g., Hanover Ins. Co. v. Plaquemines Parish Gov't*, 304 F.R.D. 494 (E.D. La. 2015); *Hanover Ins. Co. v. Plaquemines Parish Gov't*, No. 12–1680, 2015 WL 4167745 (E.D. La. July 9, 2015).

1

Presently before the Court are Plaquemines Parish's ("the Parish") claims against Jones-Blair Company ("Jones-Blair"). Jones-Blair manufactured the liquid roofing product used on the community center. On July 16, 2014, the Parish asserted products liability and redhibition claims against Jones-Blair, alleging that the roofing product was defective. On September 29, 2014, Catco General Contractors ("Catco") filed a crossclaim against Jones-Blair, asserting similar claims and seeking indemnity in the event that Catco is eventually found liable to the Parish. Jones-Blair now argues that the Parish's and Catco's claims against it are prescribed.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[4] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to

---

[2] Fed. R. Civ. P. 56(c) (2012).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997).

2

the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[6] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[7] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[8] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

Rule 56(d) permits a court to deny a motion for summary judgment, or to defer consideration of it, pending necessary discovery. Rule 56(d) relief is available when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."[10] "Rule 56[(d)] allows for further discovery to safeguard non-moving parties from summary

---

[5] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[7] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[8] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

[9] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[10] Fed. R. Civ. Pro. 56(d).

judgment motions that they cannot adequately oppose."[11]  "Such motions are broadly favored and should be liberally granted."[12]  Nonetheless, "a request to stay summary judgment under Rule 56[(d)] must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."[13]  "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment."[14]

## LAW AND ANALYSIS

Jones-Blair argues that both the Parish's and Catco's claims are prescribed.  In this diversity case, the Court must apply state law, including the law of prescription.[15]  The prescriptive period for tort suits in Louisiana is one year from the day of injury or damage.[16]  Louisiana requires that prescription statutes be strictly construed in favor of maintaining the action.[17]  "The burden of proof on the prescription issue lies with the party asserting it unless the plaintiff's claim is barred on its face, in which case the burden shifts to the

---

[11] *Culwell v. City of Fort Worth*, 468 F.3d 868, 871 (5th Cir. 2006).

[12] *Id.*

[13] *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010).

[14] *Id.*

[15] *Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 344 (5th Cir. 2009).

[16] La. Civ. Code. art. 3492.

[17] *Bouterie v. Crane*, 616 So. 2d 657, 660 (La. 1993).

plaintiff."[18] "[A] plaintiff has three theories upon which he may rely to establish prescription has not run: suspension, interruption and renunciation."[19] The Court will address each party's claims against Jones-Blair in turn.

### I. Catco's Claims

Catco filed suit against Jones-Blair on September 29, 2014. Jones-Blair argues that prescription on Catco's claims against it began to run long before September 28, 2013 (one year before Catco filed suit). The Court disagrees. Catco's claims against Jones-Blair, while based on tort and redhibition, are claims for indemnity. Catco denies that it has any liability to the Parish for the problems with the community center. In the event that Catco is found liable to the Parish, however, Catco alleges that any problems with the roof are the fault of Jones-Blair. Thus, if Catco is ultimately held liable to the Parish, Catco seeks indemnity from Jones-Blair to the extent that Catco's liability is related to defects in the roof material.

As the Louisiana Supreme Court recently explained, "the prescriptive period on a claim for indemnity does not begin to run until [the party seeking indemnity] is cast in judgment, regardless of the applicable theory of indemnity."[20] Therefore, because Catco has not been cast in judgment or otherwise sustained a loss as a result of Jones-Blair's alleged fault, prescription on Catco's claims has not yet begun to run. Accordingly, Catco's claims against Jones-Blair are not prescribed, and Jones-Blair's Motion is denied as to Catco.

---

[18] *Bailey v. Khoury*, 891 So. 2d 1268, 1275 (La. 2005).

[19] *Bouterie*, 616 So. 2d at 660.

[20] *Reggio v. E.T.I.*, 15 So. 3d 951, 958 (La. 2008).

## II. The Parish's Claims

The Parish filed suit against Jones-Blair on July 16, 2014. Jones-Blair contends that the Parish's claims against it are subject to a one-year prescriptive period and that prescription began to run in 2010. While the Court agrees that the Parish's claims are subject to a one-year prescriptive period, the Court finds that Jones-Blair has not established the date on which prescription began to run.

Under Louisiana law, prescription on the Parish's claims against Jones-Blair begins to run from the moment that the Parish acquired constructive knowledge of its claims.[21] Jones-Blair contends that prescription began to run on December 17, 2010 or, alternatively, on March 7, 2012. The Court rejects both arguments.

### *A. December 17, 2010*

As this Court has previously noted, the Parish commissioned an independent evaluation of the community center in 2010 in response to multiple recurring problems with the building. A report containing the results of this evaluation was issued on December 17, 2010 (the "Rimkus Report"). The report noted that "[t]he roof as constructed by the general contractor had active roof leaks . . . causing water intrusion into the building."[22] The report recommended that, to remedy the roof leaks, "[t]he general contractor should locate and repair

---

[21] *Raborn v. Albea*, 144 So. 3d 1066, 1072 (La. App. 1 Cir. 2014) (holding that prescription on products liability claim began to run from the date on which plaintiff acquired constructive knowledge of his claim); *Gadpaille v. Thomas*, 990 So. 2d 126, 129 (La. App. 2 Cir. 2008) (holding that prescription on redhibition claim began to run on the date plaintiff acquired constructive knowledge of claim).

[22] Doc. 550-3, p.5.

6

the roof leaks per the roof manufacturers published instructions."[23] Jones-Blair contends that, upon receipt of this report, the Parish knew that the roof was defective and that prescription on the Parish's claims against Jones-Blair began to run.

In *Jordan v. Employee Transfer Corporation*, the Louisiana Supreme Court considered a similar argument.[24] The Jordans purchased a home on October 14, 1981.[25] Prior to the purchase, they were led to believe that the foundation of the home was sound.[26] On October 1, 1982, the Jordans' den flooded during a rainstorm.[27] The Jordans' insurer concluded that leaky flashing near the chimney was the cause of the flood.[28] Accordingly, the insurer paid to repair the damage, and Mr. Jordan repaired the flashing.[29] On December 1, 1982, the den flooded again during another rain.[30] This time, because the carpet had been pulled up, the Jordans were able to see that water was coming up through the foundation.[31] They filed a redhibition claim against the seller of the home on December 1, 1983.[32] The Louisiana Supreme Court held that prescription on their redhibition claim did not begin to accrue until they saw

---

[23] *Id.* at p.18.
[24] 509 So. 2d 420 (La. 1987).
[25] *Id.* at 420.
[26] *Id.* at 421.
[27] *Id.*
[28] *Id.* at 422.
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*

7

water coming up through the foundation on December 1, 1982.[33] Although the Jordans knew that they had a problem with water leaking into the home before that, they reasonably associated it with leaky flashing.[34] According to the Court, "prescription did not begin to run until they had a reasonable basis to pursue a claim against a specific defendant."[35] Because the Jordans did not realize they had a redhibition claim (as opposed to just leaky flashing) until they saw the water coming through the foundation, prescription did not begin to accrue until that time.[36]

Like the Jordans, the Parish knew that the building had problems long before they filed suit. However, nothing in the Rimkus Report leads to the conclusion that the roof *material* was defective. In fact, the report specifically recommends that the roof be repaired according to Jones-Blair's published instructions.[37] The fact that the Rimkus Report contemplates using the same roofing material to repair the roof belies the conclusion that Jones-Blair's product was defective. Because the Parish had no reason to suspect that the roofing material was defective in 2010, prescription did not begin to run at that time.

  *B. March 7, 2012*

Jones-Blair next contends that prescription began to run on March 7,

---

[33] *Id.* at 424.

[34] *Id.* at 423–24.

[35] *Id.* at 424.

[36] *Id.*

[37] Doc. 550-3, p.18.

8

2012. It argues that, on that date, the Parish tendered the roof to Jones-Blair for repairs. Jones-Blair correctly notes that "prescription is interrupted [on a redhibition claim] when the seller accepts the thing for repairs and commences anew from the day he tenders it back to the buyer or notifies the buyer of his refusal or inability to make the required repairs."[38] Jones-Blair offers no evidence, however, that the Parish actually requested that it make repairs to the roof on March 7, 2012. There is evidence that a Jones-Blair representative visited the community center on that date, but there is no evidence regarding who requested that the representative visit the building, why the representative was there, what the representative did while at the building, or the nature of the representative's communications with the Parish. In the absence of such information, the Court simply cannot determine whether, on March 7, 2012, the Parish tendered the roof to Jones-Blair for repairs. Accordingly, the Court cannot conclude that prescription began to accrue on March 7, 2012.

As the party invoking the defense of prescription, Jones-Blair bears the burden of proving that the Parish's action has prescribed.[39] Jones-Blair has not, however, met its burden to establish the date on which prescription began to accrue. In the absence of such evidence, the Court cannot say that the Parish's action is prescribed. Accordingly, Jones-Blair's Motion is denied.

### III. The Parish's Motion for Discovery

In response to Jones-Blair's Motion, the Parish requests that it be granted

---

[38] La. Civ. Code art. 2534(C).

[39] *Khoury*, 891 So. 2d at 1275.

9

leave to conduct additional discovery on the issue of prescription. As the Court explained above, the parties have not presented sufficient evidence for the Court to evaluate Jones-Blair's Motion. Because further discovery is needed, and motions for discovery are usually granted,[40] the Parish's Motion is granted.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment is DENIED, and the Motion for Discovery is GRANTED.

New Orleans, Louisiana, this 4th day of August, 2015.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[40] *Culwell*, 468 F.3d at 871.