UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**HANOVER INSURANCE COMPANY**          **CIVIL ACTION**

**VERSUS**                              **NO. 12–1680**

**PLAQUEMINES PARISH GOVERNMENT**       **SECTION "H"(5)**

### ORDER AND REASONS

Before the Court are two Motions for Summary Judgment (Docs. 704 & 730) and a Motion to Dismiss (Doc. 742). For the following reasons, Catco's Motion for Partial Summary Judgment (Doc. 704) is GRANTED, Lexington's Motion for Partial Summary Judgment (Doc. 730) is GRANTED IN PART and DENIED IN PART, and Cajun Comfort's Motion to Dismiss (Doc. 742) is DENIED.

### BACKGROUND

The facts and procedural history of this case are long, complex, and have

1

been detailed in several of the Court's prior orders.[1]  Familiarity with those orders is assumed.

Presently before the Court are several motions asking the Court to determine whether Cajun Comfort, LLC and its insurers, United Fire and Indemnity Company and Lafayette Insurance Company ("the Cajun Comfort Insurers"), must furnish a defense to Catco General Contractors, LLC ("Catco"). A brief history of the issue of Catco's defense is required.  Catco served as the general contractor for the construction of the Bootheville-Venice Community Center ("the Project"), and Cajun Comfort served as the electrical contractor.  Its involvement in this litigation began on May 29, 2013, when the Plaquemines Parish Government asserted a third-party demand against it based on alleged defects in the building's construction.  Beginning in March of 2014, counsel for Catco issued correspondence to the various subcontractors who had performed work on the Project seeking defense, indemnity, and insurance coverage from each respective entity. Initially only Lexington Insurance Company ("Lexington"), the insurer of glass contractor New Orleans Glass Company, agreed to furnish such a defense.  In April of 2015, Lexington filed a Motion for Partial Summary Judgment against the remaining subcontractors and their insurers, seeking contribution to Catco's defense.  The Court denied this motion without prejudice, granting Lexington leave to file necessary cross-claims against the entities who refused to contribute to Catco's defense.  The majority

---

[1] *See, e.g.*, *Hanover Ins. Co. v. Plaquemines Parish Gov't*, 304 F.R.D. 494 (E.D. La. 2015); *Hanover Ins. Co. v. Plaquemines Parish Gov't*, No. 12–1680, 2015 WL 4167745 (E.D. La. July 9, 2015).

of the subcontractors' insurers have subsequently agreed to contribute to Catco's defense; however, the Cajun Comfort Insurers remain obstinate.

Both Catco and Lexington have filed independent motions for summary judgment seeking judgment that the Cajun Comfort Insurers owe Catco a defense under their policies.[2] Lexington further asserts a claim for contribution for the litigation expenses that it has already expended in providing Catco's defense.[3] The Cajun Comfort Insurers filed an omnibus opposition to these Motions.[4]

In its Motion, Lexington Insurance also argues that Cajun Comfort owes Catco a defense under the "defense and contribution" provisions of its subcontract with Catco. Cajun Comfort has responded with a Motion to Dismiss Lexington's claim for contribution.[5]

## LEGAL STANDARD

### I. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[6] A genuine issue of fact exists only

---

[2] Docs. 704, 730.
[3] Doc. 730.
[4] Doc. 768.
[5] Doc. 742.
[6] Fed. R. Civ. P. 56(c) (2012).

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[7]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[8] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[9] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[10] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[11] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[12] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an

---

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[8] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997).

[9] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

[10] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[11] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

[12] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

4

otherwise properly supported motion."[13]

## II. Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[14] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[15] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[16] The court need not, however, accept as true legal conclusions couched as factual allegations.[17] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[18] The complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.[19] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[20]

---

[13] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[14] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[15] *Id.*

[16] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

[17] *Iqbal*, 556 U.S. at 678.

[18] *Id.*

[19] *Lormand*, 565 F.3d at 255–57.

[20] *Jones v. Bock,* 549 U.S. 199, 215 (2007).

## LAW AND ANALYSIS

### I. Duty Owed by the Cajun Comfort Insurers

At the outset, the Court notes that Louisiana law applies to this dispute concerning the Cajun Comfort Insurers' duty to defend.[21] The Cajun Comfort Insurers have argued that they do not owe a defense to Catco under their insurance policies. When determining whether an insurance company has a duty to defend a suit against its insured, Louisiana courts apply the so-called "eight corners rule."[22] Under this rule, the court looks only to the four corners of the petition and the four corners of the insurance policy.[23] An insurer has a duty to defend against the suit if, assuming all allegations in the petition to be true, there would be both liability to the plaintiff and coverage under the policy.[24] "An [insurer's] duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy."[25] "In other words, the test is not whether the allegations unambiguously assert coverage, but rather whether they do not unambiguously exclude coverage."[26] "Under this analysis, the factual allegations of the plaintiff's petition must be liberally interpreted to

---

[21] *United Fire and Cas. Co. v. Hixon Bros. Inc.*, 453 F.3d 283 (5th Cir. 2006) (noting that federal court must apply Louisiana law to insurance policies issued and delivered in Louisiana).

[22] *Vaughn v. Franklin*, 785 So. 2d 79, 84 (La. App. 1 Cir. 2001).

[23] *Id.* (citing *Am. Home Assur. Co. v. Czarniecki*, 230 So. 2d 253, 259 (La. 1969)).

[24] *Id.*

[25] *Steptore v. Masco Const. Co.*, 643 So. 2d 1213, 1218 (La. 1994).

[26] *Johnson v. Misirci*, 955 So. 2d 715, 718 (La. App. 4 Cir. 2007).

6

determine whether they set forth grounds which raise even the possibility of liability under the policy."[27]  "[A]n insurer's duty to defend lawsuits against its insured is broader than its liability for damage claims."[28] Indeed, "a duty to defend...exist[s] if there is at least a single allegation in the petition under which coverage is not unambiguously excluded."[29]

All parties acknowledge that the Cajun Comfort Insurers issued Commercial General Liability policies to Cajun Comfort for the relevant policy periods. These policies contain identical Additional Insured Endorsements by which Catco is covered for "property damage" arising from Cajun Comfort's "acts or omissions." Nevertheless, the Cajun Comfort Insurers maintain that Plaquemines Parish's Third Party Complaint against Catco does not state a covered claim. This contention is without merit. As noted above, in determining whether or not an insurer owes a duty to defend, the Court must apply the "eight-corners rule," looking only to the petition and the terms of the policy itself.

An examination of the Parish's Third Party Demand and the Parish's Third Supplemental, Amended, and Restated Third Party Demand reveals claims that raise at least the possibility of liability under these policies. The initial demand alleges damages caused by acts of negligence that directly relate to work done by various subcontractors on the project.[30]  The Amended Complaint specifically alleges that Catco and its subcontractors failed to

---

[27] *Id. See also Czarniecki*, 230 So. 2d at 259.

[28] *Johnson*, 955 So. 2d at 718.

[29]*Yarborough v. Federal Land Bank of Jackson*, 731 So. 2d 482 (La App. 2 Cir. 1999).

[30] Doc. 15.

complete work on the building in a workmanlike manner, providing a veritable litany of alleged defects in the building's construction.[31] Included in this list of defects is an allegation that "electrical conduit appears to have been improperly imbedded into the plaster."[32] To avoid the duty to defend, the insurer must show that the complaint unambiguously excludes coverage. The Court finds that this allegation by the Parish is sufficient to give rise to the possibility of a covered claim, as it alleges a defect involving the electrical system. The Complaint therefore triggers a duty to defend on the part of the Cajun Comfort Insurers, and they must participate in Catco's defense.[33]

### II. Duty Owed by Cajun Comfort

Lexington's Motion further argues that Cajun Comfort itself should participate in the defense of Catco based on the defense and indemnity provisions of its subcontract with Catco. Cajun Comfort has responded to this Motion with its own Motion to Dismiss the portions of Lexington's Cross-claim asserting a right of contribution for Catco's ongoing defense. Notably, Cajun Comfort takes no position on the duty to defend as it applies to its insurers.

The Louisiana Supreme Court has held that "an indemnity agreement is a 'specialized form of contract which is distinguishable from a liability insurance

---

[31] Doc. 216.

[32] Doc. 216.

[33] The Court further notes that neither Cajun Comfort nor its insurers have filed a Motion to Dismiss. Indeed, the Court previously denied Cajun Comfort's Motion for Summary Judgment on the Parish's claims against it.

8

policy.'"[34] "An indemnitor is not liable under an indemnity agreement until the indemnitee 'actually makes payment or sustains loss.' Thus. . .a cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid.'"[35] Subsequent courts have noted, however, that though a claim for indemnity is premature until liability is ultimately imposed, there is no blanket bar on the filing of third-party claims for indemnity.[36] Thus, though it is now premature to impose liability on Cajun Comfort for Catco's defense, it is likewise premature to dismiss Lexington's Cross-claim against Cajun Comfort. Due to the nature of indemnity agreements, the Court must defer ruling on Lexington's Cross-claim as to Cajun Comfort until a final determination of liability in this case has been made. The Court therefore denies both Cajun Comfort's Motion to Dismiss and the portion of Lexington's Motion for Summary Judgment seeking judgment against Cajun Comfort for defense costs.

## CONCLUSION

For the foregoing reasons, Catco's Motion for Partial Summary Judgment is GRANTED and Lexington's Motion for Partial Summary Judgment is GRANTED IN PART, inasmuch as the Court finds that United Fire and

---

[34]*Suire v. Lafayette City-Parish Consol. Gov.*, 907 So. 2d 37, 51 (La. 2008) (quoting *Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 (La. 1987)).

[35]*Id.* (quoting *Meloy*, 504 So. 2d at 839) (internal citations omitted).

[36] *Winslow v. American Airlines, Inc.,* No. 07-236, 2008 WL 4469962, at *2 (E.D. La. Sept. 29, 2008); *Dean v. Entergy Louisiana,* LLC, No. 10-887, 2010 WL 9447498, at *3 (La. App. 5 Cir. October 19, 2010).

Indemnity Company and Lafayette Insurance Company must contribute to the defense of Catco. Lexington's Motion for Partial Summary judgment is DENIED IN PART, inasmuch as it presently seeks defense costs from Cajun Comfort itself. Cajun Comfort's Motion to Dismiss Lexington's Cross Claim is likewise DENIED.

    New Orleans, Louisiana, this 28th day of August, 2015.

*[signature]*

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**